**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **INTAKE BREATHING TECHNOLOGY, LLC,**<br><br>                    Plaintiff,<br><br>v.<br><br>**The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on the Attached Schedule A,**<br><br>                    Defendants. | **Case No. 25-cv-10344**<br><br>**JURY TRIAL DEMANDED** |

## <u>VERIFIED COMPLAINT</u>

Plaintiff Intake Breathing Technology, LLC (referred to herein as "Plaintiff") hereby brings the present action against all Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associates Identified on Schedule A (collectively, "Defendants"), attached hereto, as follows:

### I.      JURISDICTION AND VENUE

1.      This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to the provisions of the Patent Act, 35 U.S.C. § 1 et seq.; 28 U.S.C. § 1338(a)-(b) (conferring exclusive jurisdiction over claims arising under the patent laws and concurrent jurisdiction over claims of unfair competition and trade dress infringement when joined with a substantial and related patent claim); and 28 U.S.C. § 1331 (federal question jurisdiction). Plaintiff's claims include patent infringement and trade dress infringement arising under federal law.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants because Defendants structure their

1

business activities so as to target consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores operating under the aliases identified on Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, sell products which infringe Plaintiff's patented inventions and misappropriate Plaintiff's protectable trade dress (collectively, the "Unauthorized Products") to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the state of Illinois.

## II.    INTRODUCTION

3.     This is an on-going effort by Plaintiff to prevent e-commerce store operators who infringe upon Plaintiff's patented invention and misappropriate Plaintiff's protectable trade dress from further selling and/or offering for sale Unauthorized Products. The existence of the Unauthorized Products has hampered Plaintiff's ability to enter and expand its footprint in the market—a market within which Plaintiff should have exclusionary rights under its patent and exclusive rights in the distinctive trade dress associated with its products. In addition, the presence of these infringing and confusingly similar products in the marketplace has forced Plaintiff to spend significantly more on corrective marketing efforts to mitigate consumer confusion and preserve its brand reputation, thereby causing further harm.

4.     Defendants create e-commerce stores under one or more Seller Aliases and then advertise, offer for sale, and/or sell Unauthorized Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share identifiers, such as design elements and similarities of the Unauthorized Products offered for sale, establishing that a logical relationship exists

between them, and that Defendants' infringing operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants take advantage of a set of circumstances, including the anonymity and mass reach afforded by the Internet and the cover afforded by international borders, to violate Plaintiff's intellectual property rights with impunity. Defendants attempt to avoid liability by operating under one or more Seller Aliases to conceal their identities, locations, and the full scope and interworking of their infringing operation.

5. Plaintiff is forced to file this action to combat Defendants' infringement of its patented invention and misappropriation of its protectable trade dress, as well as to protect consumers from purchasing Unauthorized Products over the internet. Plaintiff has been, and continues to be, irreparably damaged through loss of market share (including the inability to generate and expand market share), erosion of Plaintiff's patent and trade dress rights, and damage to its brand identity. Plaintiff therefore seeks both injunctive and monetary relief to address and prevent further harm.

### III.   PLAINTIFF'S TRADE DRESS

6. Plaintiff has continuously engaged in the design, development, manufacture, promotion, and sale of its ███████ products. Plaintiff created unique, distinctive, and non-functional designs to use with its ███████. Plaintiff has extensively and continuously promoted and used its designs for its ███████ for years in the United States in in Illinois. Through that extensive and continuous promotion and use, Plaintiff's designs have become a well-known indicator of the origin and quality of Plaintiff's ███████. Plaintiff's designs also have acquired substantial secondary meaning in the marketplace and have become famous. As discussed in more detail below, Plaintiff owns trade dress rights relating to its ███████

3

products.  Plaintiff's ███████ Trade Dress is collectively referred to herein as "███████

███████████".

7.      Plaintiff has enjoyed significant sales of its ███████ throughout the United States, including sales to customers in the State of Illinois.  Plaintiff has invested significant resources in the design, development, manufacture, advertising, and marketing of its ███████

████. The designs and features of ███████ have received widespread and unsolicited public attention.  For example, Plaintiff's ███████ have been featured in numerous newspaper, magazine, and Internet articles, including in the State of Illinois.

8.      The designs of Plaintiff's ███████ are distinctive and non-functional and identify to consumers that the origin of Plaintiff's ███████ is Plaintiff.  As a result of at least Plaintiff's continuous and extensive use of the designs of its ███████, Plaintiff's marketing, advertising, and sales of its ███████, and the highly valuable goodwill, substantial secondary meaning, and fame acquired as a result, Plaintiff owns trade dress rights in the design and appearance of its ███████, which consumers have come to uniquely associate with Plaintiff.

9.      Exemplary images of Plaintiff's ███████ are shown below:



10. Plaintiff has trade dress rights in the overall look, design, and appearance of the ████████, which includes the design and appearance of the curves, tapers, and lines in the ████████ kit, specifically:



#### IV.     ALLEGATIONS SUPPORTING JOINDER

11.     Joinder of Defendants identified in Schedule A is proper under 35 U.S.C. § 299(a) and Fed. R. Civ. P. 20(a) because Plaintiff's claims arise from the same series of transactions or occurrences, namely, the unauthorized manufacture, importation, offering for sale, and sale of substantially identical ███████████████ that infringe Plaintiff's Patent, misappropriate its protectable trade dress, and unlawfully use Plaintiff's copyrighted advertisements. Each Defendant is alleged to have marketed, sold, or distributed the same or materially indistinguishable infringing product, often using coordinated or near-identical online storefronts, product listings, descriptions, advertising language, and in many cases, copies of Plaintiff's copyrighted promotional materials. These shared tactics further demonstrate that joinder is appropriate, as the claims involve common questions of law and fact.

12.     The products at issue share the same or equivalent physical structure and serve the same commercial purpose. Specifically, they consist of a two-part nasal dilator system featuring ████████████████████████████████████████████████████████. The infringing products replicate this design, utilizing ██████████████████ to achieve identical functionality.

|  |  |
|---|---|
| ██████████ | ████████████████ |
| ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ | |

---

[1] ████████████████████████████████████████████████████████████████████.



13.     As shown above, the ███████████ independently purchased and depicted above is identical in shape and ornamental features to the applicator design claimed by Plaintiff. Specifically, it mirrors the patented product's █████████████████████████████ ████████████████ These similarities are not coincidental or functional refinements— they reflect a direct replication of the protected design. The visual comparison confirms that the accused product embodies the same distinctive configuration, thereby supporting Plaintiff's claim of infringement.

14.     Furthermore, the infringing products' packaging, each component within the packaging, and the overall shape are all identical to Plaintiff's product, thereby exacerbating consumer confusion and infringing upon Plaintiff's intellectual property rights. ████████; see also ¶ 12 *infra*.

15.     This consistent labeling convention strongly suggests that the products originate from the same or closely related upstream manufacturers and are distributed through coordinated supply chains. Plaintiff has independently purchased and reviewed a representative sample of the accused products, reviewed each listing, and verified that the infringing features are functionally and structurally indistinguishable across sellers.

16. In addition, ██████ are identical because the ████████████████████ ████████████ that can only be replicated by the same machinery, indicating a shared source of manufacture or tooling, further confirming that the products are materially the same and support proper joinder.



17. The ██████████████ depicted above are identical in shape, configuration, and overall appearance to Plaintiff's patented product and trade dress. Each ████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████

18. This specific combination of shape, proportion, color contrast, and layout has acquired secondary meaning and serves as a source identifier for consumers, signifying Plaintiff

as the origin of the product. Customers frequently purchase ████████████████ and have come to recognize—based solely on the ████████████████—that they are intended for use with Plaintiff's patented product. The ████████████████ functions not only as a physical component but also as a visual cue in the marketplace, reinforcing the association between the product's appearance and its source. As such, the overall look of the tabs has acquired protectable trade dress, and Defendants' unauthorized use of that appearance is likely to cause confusion, mistake, or deception among consumers, as it misappropriates the commercial impression Plaintiff has developed through sustained use, advertising, and consumer recognition.

19.     Requiring separate lawsuits for each Defendant—each of whom sells identical or substantially similar infringing products—would lead to duplicative proceedings involving the same factual and legal issues. This would unnecessarily burden both the Court and the parties and create a significant risk of inconsistent judgments. Joinder in this context promotes judicial efficiency, ensures consistent adjudication, and is particularly appropriate in patent enforcement actions, where defendants frequently operate anonymously and in coordination across digital marketplaces.

20.     Accordingly, joinder of the Defendants in this action is proper under 35 U.S.C. § 299(a), fully supported by the weight of legal authority in this jurisdiction, and warranted based on the substantial identity of products, coordinated conduct, and overlapping questions of law and fact that unify all claims in this case.

## V.  THE PARTIES

21.     Plaintiff, Intake Breathing Technology LLC, is a California corporation with its principal place of business at 614 Santa Barbara Street, Ste. A, Santa Barbara, CA 93101 and is the owner of the patent asserted in this action.

9

22.     Plaintiff is the owner of all right, title, and interest in █████████████████ ███████████. A true and correct copy of Plaintiff's Patent is attached hereto as **Exhibit 1**.

23.     ██████████████████████████████. *See **Id.***

24.     ████████████ was and is valid and enforceable at all times relevant to this action and is entitled to a presumption of validity under 35. U.S.C. § 282.

25.     The patented ████████████████ was invented by ████████████, a prolific inventor and motorsports enthusiast who holds multiple patents across various fields. The idea for the ██████ was first conceived during a motorcycle excursion. ███████████ ████████████████████████████████████████████. This experience prompted him to improvise ████████████████████████████ ██████████████████████████████.

26.     The concept resurfaced during a family gathering, where ████████ realized that this innovation could have a broader application for people ████████████████████ in everyday life. What started as a solution for an isolated motor-sports problem evolved into a novel and widely useful device. That idea became a reality through years of design, development, and refinement, ultimately resulting in the patented technology at issue in this case.

27.     Plaintiff developed a product line embodying the Asserted Patent under the brand name "████████████" (collectively, "Plaintiff's Products"), which is sold exclusively through its website (████████████████), on e-commerce platforms such as Amazon.com and TikTok, and through its network of authorized distributors. Plaintiff's product line includes ████ ██████████████████████████████████████████

28.     Plaintiff displays the URL on the packaging to Plaintiff's website (▮▮▮▮▮▮▮▮▮▮▮▮), where Plaintiff displays a list of its products, and which patents those products embody.

29.     In addition, Plaintiff expressly identifies its patented technology on its Amazon.com product listings, thereby providing clear public notice—including to competitors and infringers—of its patent rights. This public disclosure further underscores the willful nature of the infringement by those who continue to copy Plaintiff's images, advertising materials, and patented product designs despite actual or constructive notice.

## VI. DEFENDANTS' UNLAWFUL CONDUCT

30.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their infringing network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

31.     The success of Plaintiff's Products has resulted in significant infringement of Plaintiff's Patent. Due to the growing popularity and demand for the patented nasal dilator technology, opportunistic sellers have entered the market with infringing products that closely mimic Plaintiff's designs. As a result of this ongoing infringement, Plaintiff is currently losing sales in the six-figure range on a monthly basis, severely impacting its ability to capitalize on its own innovation and recover its investment in product development and marketing.

32.     Because of this, Plaintiff has implemented a comprehensive anti-infringement program that involves investigating suspicious websites and online marketplace listings identified

through proactive Internet sweeps. Plaintiff has devoted substantial time and resources to submitting takedown requests and monitoring compliance across multiple e-commerce platforms. These efforts have required many hours that could otherwise be dedicated to product development, marketing, and legitimate business growth. Despite Plaintiff's diligence, the takedown campaigns have yielded only limited success, as infringing sellers often reappear under different storefront names or relocate to new platforms. As such, Plaintiff is left with no meaningful remedy other than seeking this Court's intervention to halt the widespread infringement and preserve its rights under the law.

33.     Defendants are not only offering identical products, but are also unlawfully using Plaintiff's copyrighted advertisements and proprietary packaging, creating consumer confusion and further compounding the harm to Plaintiff's brand and reputation. These unauthorized uses mislead consumers into believing they are purchasing legitimate ███████ products, thereby diverting sales and undermining Plaintiff's hard-earned goodwill.

34.     The very same concerns regarding anonymity, multi-storefront infringers, and slow and ineffective notice and takedown marketplace procedures affect Plaintiff's enforcement efforts when trying to assert its own patent rights.

35.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, sell and/or offer for sale Unauthorized Products to residents of Illinois.

36.     Defendants concurrently employ and benefit from similar advertising and marketing strategies. For example, some Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be

authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars in multiple ways, including via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish their stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants use of Plaintiff's Patents, and none of the Defendants are authorized retailers of Plaintiff's Products.

37.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

38.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their infringing operation, and to avoid being shut down.

39.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other common features, such as registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Products for sale by the Seller Aliases bear similar

13

irregularities and indicia of being infringing to one another, suggesting that the Unauthorized Products were manufactured by and come from a common source and that Defendants are interrelated.

40.     E-commerce store operators like Defendants frequently communicate through QQ.com chat rooms and utilize websites such as sellerdefense.cn, which offer tactics for managing multiple online marketplace accounts and evading detection by intellectual property owners. These platforms not only provide technical guidance on avoiding enforcement actions but also actively monitor newly filed intellectual property lawsuits in the United States. Upon detection, they alert store operators of impending enforcement by publishing blog posts or bulletins and recommending that operators immediately cease infringing activities, liquidate financial accounts, and switch payment processors to avoid asset restraint. Notably, Chinese law firms and service agencies play an active role in this process—monitoring U.S. filing systems in real time and using that information to solicit business from accused infringers. As a result, this ecosystem has evolved into a lucrative industry—not only for the infringing sellers, but also for the service providers who profit from helping them exploit intellectual property loopholes and avoid accountability.

41.     Infringers such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation despite Plaintiff's enforcement. E-commerce store operators like Defendants maintain offshore bank accounts and regularly move funds from their financial accounts to offshore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to plaintiffs.

42.     Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or

license from Plaintiff have, jointly and severally, knowingly and willfully infringed Plaintiff's Patents in connection with the use and/or manufacturing of Unauthorized Products and distribution, offering for sale, and sale of Unauthorized Products into the United States and Illinois over the Internet.

43.     Defendants' unauthorized use and/or manufacturing of the invention claimed in Plaintiff's Patents in connection with the distribution, offering for sale, and sale of Unauthorized Products, including the sale of Unauthorized Products into the United States, including Illinois, is likely to cause, and has caused, loss of market share and erosion of Plaintiff's patent rights is irreparably harming Plaintiff.

## COUNT I
## PATENT INFRINGEMENT (15 U.S.C. § 271) – THE '969 PATENT

44.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

45.     As shown, Defendant is knowingly and willfully manufacturing, importing, distributing, offering for sale, and selling infringing products in the same transaction, occurrence, or series of transactions or occurrences. Defendant, without any authorization or license from Plaintiff, has knowingly and willfully offered for sale, sold, and/or imported into the United States for subsequent resale or use the same product that infringes directly and/or indirectly the ██ Patent.

46.     The Unauthorized Products being sold by Defendant infringes at least Claim 1 of the ██ Patent. For purposes of notice pleading, Plaintiff shows below how the representative sample of Unauthorized Products infringes claim 1 of the ██ Patent.

47.     Unauthorized Products are ████████████████████████████ ████████████████████████████████████████



██████████████████ Unauthorized Products ██████████████

████████████████████████████████████████████████

███████████████████████████████████████████.

48. ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████.

49. ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████.

50. ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████.

51. ████████████████████████████████████

█████████████████████████████████ Unauthorized Products ████████

███████████████████████████████████████████████████████

███████████████████████ .

52. ████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████ .

53. ████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████ .

54.     As a result of Defendants' infringement of the '██ Patent, Plaintiff has been injured by Defendant's unauthorized use of Plaintiff's intellectual property. Plaintiff seeks monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court, and Plaintiff will continue to suffer damages in the future unless Defendant's infringing activities are enjoined.

55.     Unless an injunction is issued enjoining Defendant and its agents, servants, employees, representative, affiliates, and all others acting or in active concert therewith from infringing the ████ Patent, Plaintiff will be greatly and irreparably harmed.

**COUNT II**
**TRADE DRESS INFRINGEMENT (15 U.S.C. §1125(a))**

56.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

57.     Defendants' advertisements, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the Unauthorized Products violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by infringing Plaintiff's ▮▮▮▮▮▮ Trade Dress.  Defendants' use of ▮▮▮▮▮▮ Trade Dress and/or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Defendants with Plaintiff and as to the origin, sponsorship, and/or approval of the Unauthorized Products, at least by creating the false and misleading impression that the Unauthorized Products are manufactured by, authorized by, or otherwise associated with Plaintiff.

58.     Plaintiff's ▮▮▮▮▮▮ Trade Dress is entitled to protection under the Lanham Act. Plaintiff's ▮▮▮▮▮▮ Trade Dress includes unique, distinctive, and non-functional designs. Plaintiff has extensively and continuously promoted and used ▮▮▮▮▮▮ Trade Dress in the United States. Through that extensive and continuous use, ▮▮▮▮▮▮ Trade Dress has become a well-known indicator of the origin and quality of ▮▮▮▮▮▮ Nasal Dilator products. Plaintiff's ▮▮▮▮▮▮ Trade Dress has also acquired substantial secondary meaning in the marketplace. Moreover, Plaintiff's ▮▮▮▮▮▮ Trade Dress acquired this secondary meaning before Defendants commenced their unlawful use of Plaintiff's ▮▮▮▮▮▮ Trade Dress in connection with the Unauthorized Products and Plaintiff's ▮▮▮▮▮▮ Trade Dress has secondary meaning today.

59.     Defendants' use of ▮▮▮▮▮▮ Trade Dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury

to Plaintiff for which Plaintiff has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Plaintiff's ████ Trade Dress, Plaintiff's ███████████, and Plaintiff. Defendants' use of ████ ████ Trade Dress and/or colorable imitations thereof has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of the Unauthorized Products to Plaintiff's ███████ Trade Dress and by Defendants' continuing disregard for Plaintiff's rights.

60.     Plaintiff is entitled to injunctive relief, and Plaintiff is entitled to recover at least Defendants' profits, Plaintiff's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

## COUNT III
## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN UNDER § 43(a), 15 U.S.C. § 1125(a)

61.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

62.     Defendants' advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the Unauthorized Products, in direct competition with Plaintiff, violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and constitute unfair competition and false designation of origin, at least because Defendants have obtained an unfair advantage as compared to Plaintiff through Defendants' use of ████████ Trade Dress, and because such use is likely to cause consumer confusion as to the origin, sponsorship, and affiliation of Defendants' Unauthorized Products, at least by creating the false and misleading impression that their Unauthorized Products are manufactured by, authorized by, or otherwise associated with Plaintiff.

63.     Plaintiff's ▮▮▮▮▮▮ Trade Dress is entitled to protection under the Lanham Act.  Plaintiff's ▮▮▮▮▮▮ Trade Dress includes, unique, distinctive, and non-functional designs.  Plaintiff has extensively and continuously promoted and used ▮▮▮▮▮▮ Trade Dress in the United States.  Through that extensive and continuous use, Plaintiff's ▮▮▮▮▮▮ Trade Dress has become a well-known indicator of the origin and quality of Plaintiff's ▮▮▮▮ ▮▮▮ Products.  Plaintiff's ▮▮▮▮▮▮ Trade Dress has also acquired substantial secondary meaning in the marketplace.  Moreover, Plaintiff's ▮▮▮▮▮▮ Trade Dress acquired this secondary meaning before Defendants commenced their unlawful use of ▮▮▮▮▮▮ Trade Dress in connection with the Unauthorized Products and ▮▮▮▮▮▮ Trade Dress has secondary meaning today.

64.     Also, Defendants are willfully and unlawfully capitalizing on the substantial goodwill that Plaintiff has developed through years of investment in brand-building and consumer recognition.  Plaintiff has spent significant time, effort, and financial resources in nationwide and targeted advertising campaigns, including extensive marketing on the TikTok platform, to promote its patented products.  These advertising efforts have generated substantial consumer demand and goodwill associated with Plaintiff's brand.

65.     By offering and selling counterfeit and infringing products on TikTok, Defendants are unfairly reaping the benefits of Plaintiff's advertising campaigns and brand goodwill without authorization or license.  Defendants' conduct enables them to misappropriate the consumer recognition, trust, and demand created by Plaintiff's marketing investments, thereby diverting sales and damaging Plaintiff's reputation.

66.     Plaintiff has devoted considerable resources to develop a strong presence and consumer following on TikTok, which serves as a key platform for educating consumers,

20

advertising its innovative nasal breathing products, and reinforcing the association between Plaintiff's patented technology and its brand. Defendants, by promoting and selling identical or substantially similar infringing products on TikTok, exploit the very platform where Plaintiff has built its brand presence. Such conduct constitutes an intentional effort to ride on Plaintiff's coattails, mislead consumers into believing the infringing products originate from or are affiliated with Plaintiff, and reap ill-gotten profits from Plaintiff's marketing expenditures.

67. Moreover, Defendants' use of ███████████ Trade Dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Plaintiff for which Plaintiff has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associate with ████ ████ Trade Dress, ██████████, and Plaintiff.

68. On information and belief, Defendants have offered to sell and knowingly sold Unauthorized Products with the understanding that, as foreign entities, any enforcement efforts by Plaintiff would be difficult as many countries, including and especially China, make enforcement efforts of foreign IP difficult and collection of any judgments highly improbable.

69. On information and belief, to the extent enforcement efforts are made against Defendants, Defendants will merely ignore the efforts if they are permitted to move any assets out of their marketplace accounts and can easily create new accounts for online marketplaces to sell Unauthorized Products – with little recourse available to Plaintiff.

70. Defendants have engaged in a pattern of unfair competition by operating storefronts in e-commerce marketplaces with the intent to defraud customers and evade legal and financial responsibilities.

71.     Specifically, Defendants have been observed engaging in the following unlawful activities:

a.  Exploitation of Marketplace Accounts:  Defendants systematically divert funds from marketplace accounts into personal or untraceable accounts, thereby unlawfully extracting financial resources from the marketplace.

b.  Unlawful Storefront Closure:  Upon being detected or facing financial scrutiny, Defendants promptly close their storefronts to avoid further investigation or legal consequences.

c.  Reopening Under New Entities:  after closing the storefronts, Defendants frequently reopen new business entities or storefronts under different names, thereby circumventing legal and financial accountability and continuing their infringing activities.

72.     Collectively, these actions constitute unfair competition as Defendants mislead consumers, undermine fair market practices, and harm both the integrity of the marketplace and legitimate competitors.

73.     On information and belief, Defendants' use of ▇▇▇▇▇▇ Trade Dress and colorable imitations thereof has been intentional, willful, and malicious.  Defendants' bad faith is evidenced at least by the similarity of the Unauthorized Products to ▇▇▇▇▇▇ Trade Dress and by Defendants' continuing disregard for Plaintiff's rights.

74.     Plaintiff is entitled to injunctive relief, and Plaintiff is also entitled to recover at least Defendants' profits, Plaintiff's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

75.     Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiffs will continue to suffer irreparable harm and injury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1)     That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a.     Making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use any products that infringe upon Plaintiff's Patent; and

b.     Aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon Plaintiff's Patent.

2)     Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including without limitation, any websites and/or online marketplace platforms, such as Amazon, eBay, Temu, and Walmart, shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of goods that infringe Plaintiff's Patent.

3)     That Judgment be entered against Defendants finding that they have infringed upon Plaintiff's Patent.

4)     That Judgment be entered against Defendants finding that infringement of Plaintiff's Patent has been willful.

5)     That Plaintiff be awarded damages for such infringement in an amount to be proven at trial, in no event less than a reasonable royalty pursuant to 35 U.S.C. § 284, together with interests and costs.

6)     That Plaintiff be awarded treble damages under 35 U.S.C. § 284 for Defendants' willful infringement of Plaintiff's Patent.

7)     A finding that this case is exceptional under 35 U.S.C. § 285.

8)     A finding that Defendants engaged in unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

9)     An injunction against further infringement of ███████ Trade Dress and further acts of unfair competition by Defendants, and each of their agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert with any of them, including at least from selling, offering to sell, distributing, manufacturing, importing, or advertising the Unauthorized Products, or any other products that use a copy, reproduction, or colorable imitation of ███████ Trade Dress, pursuant to at least 15 U.S.C. § 1116.

10)   An Order directing Defendants to recall all Unauthorized Products sold and/or distributed and provide a full refund for all recalled Unauthorized Products.

11)   An Order directing the destruction of all Unauthorized Products and all plates, molds, and other means of making the Unauthorized Products in Defendants' possession, custody, or control, and all advertising materials related to the Unauthorized Products in Defendants' possession, custody, or control, including on the Internet, pursuant to at least 15 U.S.C. § 1118.

12)   An award of Defendants' profits, Plaintiff's actual damages, enhanced damages, punitive damages, exemplary damages, costs, prejudgment and post judgment interest, and reasonable attorney fees pursuant to at least 15 U.S.C. §§ 1125(a), 1125(c), 1116, and 1117.

13)   That Plaintiff be awarded its reasonable attorneys' fees and costs.

24

14)     Award any and all other relief that this Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 28, 2025                    Respectfully submitted,

                                          /s/ Nicholas S. Lee
                                          Nicholas S. Lee
                                          NSLee@dickinsonwright.com
                                          Dickinson Wright PLLC
                                          55 West Monroe Street
                                          Suite 1200
                                          Chicago, Illinois 60603
                                          (312) 641-0060

                                          *Counsel for Plaintiff, Intake Breathing*
                                          *  Technology LLC*

## VERIFICATION

I, Alex Hauck, hereby certify as follows:

1.      I am the Chief Executive Officer for Intake Breathing Technology LLC. As such, I am authorized to make this Verification on Intake Breathing Technology LLC's behalf.

2.      I have read the foregoing Verified Complaint and, based on my personal knowledge and my knowledge of information reported to me by subordinates and colleagues who report to me, the factual allegations contained in the Verified Complaint are true.

3.      I certify under penalty of perjury under the laws of the United States of America that the foregoing statements made by me are true and correct.


Executed in Santa Barbara, California on August  27, 2025



_____
Alex Hauck
CEO
Intake Breathing Technology LLC